IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA,      )
                               )
            Plaintiff,         )
                               )
    vs.                        )      CRIMINAL NO. 14-30169-NJR
                               )
NATHANIEL J. WINN,             )
                               )
            Defendant.         )

### GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND MEMORANDUM OF LAW IN SUPPORT THEREOF

The United States of America, by and through its attorneys, Stephen R. Wigginton, United States Attorney for the Southern District of Illinois, and Angela Scott, Assistant United States Attorney, responds to Defendant Nathaniel J. Winn's Motion to Suppress Evidence as follows:

Defendant Nathaniel Winn asks this Court to suppress evidence obtained from the execution of a state search warrant to search his cellular telephone for a myriad of reasons relating to the validity of the state search warrant. Motion to Suppress Evidence ("Motion"). For the reasons discussed more fully below, the defendant's motion to suppress evidence should be denied.

### FACTUAL BACKGROUND

On Friday, June 20, 2014, the Mascoutah Police Department is contacted by the mother of a teenage girl who wanted to report an incident that occurred at the Mascoutah Public Pool on June 18th. The mother told the officer that her daughter and two of her friends, all of whom were minors, were at the pool when an unknown white male continued to watch the girls, all of whom were wearing bikinis. The girls reported to the mother that the man also began taking pictures of them using his cellular telephone. The girls also told the mother that the man eventually began

1

rubbing his genitals through his swimsuit. The mother told the officer that one of the girls notified a lifeguard and that the unknown male was told that he was not allowed to take pictures. According to the girls, the man left a short time later. The mother provided the officer with a photograph of Winn that one of the victims took at the time of the incident.

After interviewing the mother, the officer went to the pool and spoke with two pool employees who had been present when the incident occurred. Both employees told the officer that they saw the unknown man, later identified as Defendant Nathaniel Winn, rubbing his genitals through his swim trunks. The employees told the officer that, when the young girls got in the pool, Winn also got in and moved closed to the girls. They said that Winn took pictures of the girls while in the water. The employees also gave the officer the photographs they took of Winn. Both photographs appear to show Winn's right hand on his crotch area. After speaking with the pool employees, the officer contacted Detective Jared Lambert at approximately 1:30 p.m. and advised him of the incident. The officer also sent Detective Lambert the photographs of Winn. Detective Lambert sent the photographs out through his department e-mail in an effort to have the individual identified. A Sergeant with the department contacted Detective Lambert a short time later and stated that the individual in the picture appeared to be Nathaniel Winn. Detective Lambert was unable to continue the investigation that night, however, because of a special detail. *Detective Lambert's June 20, 2014, report detailing this information and the two pictures of Winn are attached hereto, and incorporated herein, as Exhibit A.*

Detective Jared Lambert is the only detective with the Mascoutah Police Department. As part of his usual shift, he does not work weekends. On Saturday, June 21st, however, Detective Lambert was required to work. He was notified that day by an officer who was able to positively identify the individual in the photograph as Winn by showing the photograph to individuals at a

bar that Winn frequented. One of the employees, who was also friends with Winn, positively identified the picture as that of Winn. After this individual identified the picture of Winn, he began to question the police officer as to why he was looking for Winn. After a brief discussion, the officer asked this individual not to mention their conversation to anyone.

After the discussion with this individual, the officer contacted Detective Lambert and reported this information to him. He also told Detective Lambert that he was concerned that the friend that identified Winn's photograph might contact Winn and let him know that he was a suspect in the incident that occurred at the Mascoutah Public Pool on June 18th. Both the officer and Detective Lambert immediately became concerned that Winn could learn that he was being investigated regarding this incident and attempt to destroy any possible evidence of a crime on his cellular telephone. Detective Lambert therefore decided to go to Winn's residence in an attempt to speak with Winn based on probable cause that Winn had committed a crime accompanied by the officer who had Winn identified. That day, Detective Lambert seized Winn's cellular telephone, a White Samsung Galaxy S III, after Winn consented to the seizure (but not the search) of the cellular telephone.[1]

In a footnote, the defendant sarcastically insinuates that the seizure of his cellular telephone was premised on a mistake of law based on the defendant's mistaken belief that the crime Detective Lambert was investigating was the photographing of the teenage girls at the public pool. While it is not a crime to take pictures of underage girls in bikinis at a public pool, it is, shockingly, a crime to engage in sexual conduct by rubbing and stroking your genitals in a

---

[1] Again, the defendant is mistaken. This was not a warrantless seizure of Winn's cellular telephone based on probable cause that a crime had been committed. Instead, Winn clearly consented to the seizure of his cellular telephone, as set forth on page 4 of Detective Lambert's report which was attached as Exhibit 1 to the defendant's motion to suppress, even telling his mother where it was located so that she could give it to Detective Lambert.

public place.  *See* 720 ILCS 5/11-30(a)(1).  *This statute and the statute (720 ILCS 5/11-01) that defines sexual conduct are attached hereto, and incorporated herein, as Exhibits B and C.*  This offense – Public Indecency – was the crime Detective Lambert was investigating when he went to Winn's home so the seizure of Winn's cellular telephone was not based on any mistake of law. *See* Exhibit A.  As reflected in all of Detective Lambert's reports that will be used as exhibits in the Government's response, at the top of his reports, he clearly states that he is investigating the offense of Public Indecency.  This offense is not violated by taking the pictures of the underage girls at the pool alone – it was violated when Winn began rubbing and stroking his genitals in a public place, namely, the Mascoutah Public Pool, to arouse or satisfy himself while watching and photographing the minor girls in their bikinis.  In fact, on July 3, 2014, Winn was charged in St. Clair County with, *inter alia*, the offense of Public Indecency.  *See Detective Lambert's July 3, 2014, report and Count 25 of the St. Clair County Misdemeanor Complaint, which are attached hereto, and incorporated herein, as Exhibit D.*

The defendant's footnote is also mistaken in asserting that the warrantless seizure of Winn's cellular telephone was based on probable cause that a crime had been committed.  Instead, Winn clearly consented to the seizure of his cellular telephone, even telling his mother where it was located so that she could give it to Detective Lambert.  *Detective Lambert's June 21, 2014, report is attached hereto, and incorporated herein, as Exhibit E.*  As the report notes, after learning from the officer who interviewed Winn's friend who identified Winn's picture that there was a possibility that this friend might contact Winn, Detective Lambert and this officer proceeded to Winn's residence to try to talk with Winn.  Exhibit E, at 1.  The officers were concerned that, if Winn knew that he was being investigated for the incident at the pool, he might try to destroy evidence on his cellular telephone.  *Id.*  When Winn declined to allow the officers

entry into his residence or permission to search his cellular telephone, Detective Lambert discussed with Winn, and eventually other members of Winn's family, the fact that he could try to get a search warrant to seize Winn's cellular telephone so that any evidence of a crime could not be destroyed, but that the residence would have to be secured until the search warrant was obtained. Exhibit E, at 2-3. As noted in his report, after Detective Lambert told Winn, *inter alia*, that he could not search Winn's cellular phone without a search warrant, Winn "informed [him] he would allow [him] to seize his cell phone." Exhibit E, at 3. Winn then told his mother where his cell phone was located and his mother retrieved the cellular phone from the house, with Detective Lambert following her to ensure that she did not tamper with the phone, and gave it to him. *Id.* Winn was provided a receipt for the cellular telephone when he voluntarily came to the Mascoutah Police Department to give a statement, which he decided not to provide after arriving at the station. Exhibit E, at 4-5. So, as Detective Lambert's report clearly establishes, Winn consented to the seizure (but not the search) of his cellular telephone. It was not, as the defendant mistakenly states, a warrantless seizure based on probable cause that a crime had been committed. On June 23-24, 2014, Detective Lambert and other officers began interviewing individuals regarding the incident at the Mascoutah Public Pool, including the manager of the pool and the lifeguards on duty on June 18, and the minor females who Winn watched and photographed while at the pool. Detective Lambert conducted the additional investigation to corroborate the information that he received on Friday that Winn was the individual who photographed and/or videotaped the minor girls at the pool while rubbing and stroking his genitals. Detective Lambert and the other officers recorded the interviews of eight witnesses to Winn's behavior at the Mascoutah public pool on June 18th. Five of the minor victims reported that they saw Winn watching them and taking pictures of them while fondling his genitals. Some of the girls also

stated that Winn did not try to hide the fact that he was staring at them, and that his actions in groping his genitals were noticeable. When one of the girls was asked whether it appeared that Winn was adjusting himself, scratching himself, or trying to pleasure himself, the minor immediately responded that it appeared to her that Winn was trying to pleasure himself. Four of the minor victims stated that Winn's actions in photographing and/or videotaping them without their permission and fondling his genitals while looking at them alarmed and disturbed them. Several of the girls were shown a photograph of Winn and were able to identify him as the individual who they believed to be taking pictures of them at the pool.

The minor females became so uncomfortable that one of the boys who was with them went to speak with the pool manager. The pool manager stated that the boy told her that he was friends with the minor girls, and that Winn was making the girls uncomfortable and that they thought he was taking pictures of them. After speaking with the boy, the pool manager approached Winn and told him that he was making the girls uncomfortable, and that he was not allowed to take pictures of the younger girls when they were not aware of it. She said that Winn left shortly afterwards.

In an interview with one of the lifeguards, she told Detective Lambert that she was approached by an adult female who first told her that she saw Winn taking pictures of the minor females sitting next to him. She said that the adult female told her that she was passing on the information in an effort to protect the girls. The lifeguard said that, after speaking with the woman, she began keeping an eye on Winn. The lifeguard said that she saw what appeared to be Winn taking pictures of the girls, as well as continuously looking at them. She did not, however, see Winn touching his genitals.

During the remainder of the week, Detective Lambert continued to work on the investigation which included typing up the narratives from the videotaped interviews with the witnesses from Monday and Tuesday of the week, some of which were lengthy and time-consuming, and reach out to the other agencies to find someone who could perform a forensic examination of the defendant's cellular telephone, all while attending to his other duties as the only detective with the Mascoutah Police Department.  On Friday, June 27th, Detective Lambert, knowing that he would be off the next two days, decided to wait until Monday, June 30, to get a search warrant for the defendant's cellular telephone so that he would not have any issue executing the search warrant within the 96 hours allowed to do so.

On Monday, June 30, at approximately 7:30 a.m., Detective Lambert began typing up the complaint and search warrant for the defendant's cellular telephone.  *Detective Lambert's June 30, 2014, report is attached hereto, and incorporated herein, as Exhibit F.*  Detective Lambert used a template for the complaint and search warrant, leaving the offense section and the date marked with XXXs, because the offense to be charged is typically determined by the Assistant State's Attorney ("ASA") who reviews the complaint, and the date portion is completed when the complaint and search warrant are ready to be presented to the Judge for a signature.  After typing up the complaint and search warrant, Detective Lambert forwarded the documents to ASA Julie Elliot to determine the appropriate offense to be charged based on the information provided in the complaint and any other edits that were needed.  Later that day, ASA Elliot contacted Detective Lambert and told him that the complaint and search warrant were ready to be picked up.

Detective Lambert went to ASA Elliot's office and picked up the complaint and search warrant from her.  The complaint had been signed by ASA Elliot.  Detective Lambert also signed the complaint.  The complaint and search warrant were then logged with the State's Attorney's

office and assigned the number 14SWA0137. The complaint to the search warrant indicated that it was requesting permission to search the defendant's cellular telephone for evidence related to the offense of Public Indecency. The search warrant, however, stated that the search of the telephone was for evidence related to the crime of Disorderly Conduct. *The complaint and search warrant are attached hereto, and incorporated herein, as Exhibit G.* The search warrant also listed the day as Wednesday when June 30 was actually a Monday, and had "XXXXX" where the month and day should have been. *A calendar of June 2014 is attached hereto, and incorporated herein, as Exhibit H.* Neither ASA Elliot nor Detective Lambert noticed these typographical errors before presenting the complaint and search warrant to the Honorable Judge Jan Fiss.

Judge Fiss had Detective Lambert swear to the allegations in the complaint, and then signed both the complaint and search warrant. As with ASA Elliot and Detective Lambert, Judge Fiss did not notice the typographical errors before signing the search warrant. Nor did Judge Fiss express any concern that the list of items to be searched to locate evidence of the crime of Public Indecency on the defendant's cellular telephone was too broad or too vague. After Judge Fiss signed the documents, Detective Lambert contacted the St. Clair County Sheriff's Department in order to have the data from the defendant's cellular telephone extracted in order to find evidence to support the offense of Public Indecency. He was informed that Investigator Jason Robertson was in charge of cell phone extractions but that he would not be back in the office until the next day. *See* Exhibit F.

The next day, July 1st, Detective Lambert met with Investigator Robertson at the St. Clair County Sheriff's Department at approximately 9:00 am. *Investigator Robertson's report is attached hereto, and incorporated herein, as Exhibit I.* Detective Lambert provided Investigator Robertson with the complaint and the search warrant, and requested that Investigator Robertson

conduct a forensic examination of the cellular telephone for evidence related to the offense of public indecency. *Id.* at 1. Investigator Robertson verified that the documents had been signed by a Judge and that the description of the cellular telephone in the complaint and search warrant matched the cellular telephone that he was given to examine. Investigator Robertson understood that he was to search the cellular telephone for any evidence that might be relative to the offense of public indecency, to include not only not pictures and/or videos of the minor girls taken at the pool but evidence that might be found in SMS or MMS messages, e-mails, audio files, GPS history, etc.

Investigator Robertson is assigned a Cellebrite UFED Touch machine. This machine is used to extract data from the cellular telephone so that this data can be viewed independent of the cellular telephone. The data remains on the cellular telephone intact which is then secured so that it cannot be manipulated in any manner. The Cellebrite UFED Touch machine extracts information actively stored on a cellular telephone. It will not extract deleted information from the telephone. The device is not designed to locate or flag child pornography. Its purpose is to pull data off of the cellular telephone and preserve this data so that it cannot be manipulated while also protecting the original data on the cellular telephone from being altered or manipulated in some fashion as it might be if searched manually.

Once Investigator Robertson was given Winn's cellular telephone, he immediately verified that it was in airplane mode. If it was not, he put it in this mode so that no data can be sent to or from the cellular telephone. The cellular telephone is then hooked up to one end of the machine and a thumb drive that Investigator Robertson uses only for this purpose is hooked up to other end. Once the machine indicates that all of the data has been pulled off of the cellular telephone, it is removed and secured. Investigator Robertson removes the thumb drive which has

the date formatted using Cellebrite software which makes it much easier to read and understand. Investigator Robertson then transfers this information to a .pdf document so that the information cannot be manipulated or altered in any manner. Before doing so, however, he will open a few images, texts, and/or videos, to make sure that the machine did capture this data. He does not look at all of the images or videos on the .pdf document. In this case, he put the .pdf document on a DVD and provided it to Detective Lambert along with the cellular telephone. Exhibit I, at 1. Investigator Robertson also notified Detective Lambert that he saw images of child pornography while reviewing the extraction report. Because of the way the extraction report is formatted, all of the images are plainly visible. *Id.* at 2. You do not have to click on each image to open it - - they are all there in plain view. Investigator Robertson did not review all of the images on the extraction report, and therefore did not know that the extraction report did not capture the photographs of the minor females taken at the Mascoutah Public Pool until later. On July 7, four days after charges had already been filed against Winn, including one count of public indecency; Detective Lambert manually searched Winn's cellular telephone and found ten (10) pictures of underage girls in their bikinis that had been taken at the Mascoutah Public Pool on June 18, 2014. *Detective Lambert's July 7, 2014, report is attached hereto, and incorporated herein, as Exhibit J.*

## LEGAL ANALYSIS

A. <u>The Nine-Day Delay Between the Consensual Seizure of the Cellular Telephone and the Date the Search Warrant Was Obtained Was Not Unreasonable.</u>

The defendant argues that the nine-day delay between Detective Lambert's seizure of his cellular telephone and when Detective Lambert obtained the search warrant for the cellular telephone rendered the seizure of his cellular telephone unreasonable for purposes of the Fourth

Amendment. The Supreme Court has recognized that "after seizing an item, police must obtain a search warrant within a reasonable period of time." *United States v. Burgard*, 675 F.3d 1029, 1032 (7th Cir. 2012). "When officers fail to seek a search warrant, at some point the delay becomes unreasonable and is actionable under the Fourth Amendment." *Id.* While there is no bright line test for determining when the delay becomes unreasonable, the "courts must assess the reasonable of a seizure by weighing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" *Id.* at 1033 (quoting *United States v. Place*, 462 U.S. 696, 703 (1983)).

When analyzing the individual's side of the analysis, the Seventh Circuit has recognized that "the critical question relates to any possessory interest in the seized object," and "[t]he longer the police take to seek a warrant, the greater the infringement on the person's possessory interest will be . . . ." *Id.* Here, the defendant was without his cellular telephone for nine days before the search warrant was obtained. The defendant, without providing any specific examples, simply states that that his possessory interest in the cellular telephone was "significant." Motion, at 4. During this nine-day time period, however, the defendant never contacted Detective Lambert to ask about the status of the cellular telephone that was so significant to him. His failure to do so demonstrates that this factor should be given little weight. *Id.* (citing *United States v. Stabile*, 633 F.3d 219, 235-36 (3d Cir. 2011).

With respect to the Government's side, "a key factor in [the Court of Appeal's] analysis is the strength of the state's basis for the seizure." *Id.* Again, the defendant is mistaken about the basis for the seizure of his cellular telephone. While he again incorrectly states that "Lambert seized the cell phone based upon his mistaken belief that it was illegal to take pictures of underage girls at a public pool," that it simply not true. Lambert went to the defendant's home

because he had probable cause to believe that the defendant had committed the crime of public indecency - - a crime that was violated by Winn rubbing and stroking his genitals in a public place - - and he was concerned that Winn might destroy evidence of this crime after learning from another officer that Winn's friend might let Winn know that the police were asking questions about Winn. Exhibit E, at 1. Winn then consented to the seizure of the cellular telephone with the understanding that it could not be searched unless Detective Lambert obtained a search warrant to do so. Exhibit E, at 3. The fact that Winn consented to the seizure of the cellular telephone was verified by Winn during his videotaped statement to Detective Lambert. *A portion of Detective Lambert's report of his interview with Winn is attached hereto, and incorporated herein, as Exhibit K.* Thus, the strength of the Government's basis for the seizure was extremely strong as it was based on the defendant's consent to the seizure (but not the search) of the cellular telephone that was so "significant" to him.

Finally, the Seventh Circuit has indicated that, when balancing the competing interests, the district court must consider "'whether the police diligently pursue[d] their investigation.'" *Burgard*, 675 F.3d at 1033 (quoting *Place*, 462 U.S. at 709)). "When police act with diligence, courts can have greater confidence that the police interest is legitimate and that the intrusion is no greater than reasonably necessary." *Id.* The defendant indicates that Detective Lambert had no good reason for waiting the nine days to obtain the search warrant, and therefore the seizure of his cellular telephone was unreasonable. Motion, at 4. He then asserts, in another inappropriate use of sarcasm and a veiled implication that the Government would somehow try to mislead this Court, that there "will soon be no shortage of dog-ate-my-home-work-type of excuses offered to explain his delay" or that the Government would present a "made-up reason for the delay." Motion, at 4-5.

The Government will not address these absurd allegations. Rather, it will rely on the evidence to demonstrate that Detective Lambert acted diligently in obtaining the search warrant. Detective Lambert, who is typically off on the weekends, was given consent to seize the cellular telephone on June 21st, a Saturday. He was off the next day. Before obtaining the search warrant on Monday, June 23, Detective Lambert decided to do what any conscientious police officer would do. He decided to do additional interviews to ensure that Winn was, in fact, the person who rubbed and stroked his genitals while watching and photographing the minor girls at the public pool on June 18th, before needlessly searching his cellular telephone. Recall, Detective Lambert requested consent to seize the cellular telephone because he feared that evidence might be destroyed based on probable cause to believe that the crime of Public Indecency had occurred. At that time, all of the information he had was information he had received from other officers, and none of the information came directly from any of the minor victims.

Therefore, on June 23-24, 2014, Detective Lambert and other officers began interviewing individuals regarding the incident at the Mascoutah Public Pool, including the manager of the pool and the lifeguards on duty on June 18, and the minor females who Winn watched and photographed while at the pool. Several of the girls were shown a photograph of Winn and were able to identify him as the individual who they believed to be taking pictures of them at the pool. All of the girls also stated that they saw Winn touching or groping his genitals while watching them or while taking the pictures. During the remainder of the week, Detective Lambert continued to work on the investigation which included typing up the narratives from the videotaped interviews with the witnesses from Monday and Tuesday of the week, some of which were lengthy and time-consuming, and reach out to the other agencies to find someone who could perform a forensic examination of the defendant's cellular telephone, all while attending to his

other duties as the only detective with the Mascoutah Police Department. On Friday, June 27th, Detective Lambert, knowing that he would be off the next two days, decided to wait until Monday, June 30, to get a search warrant for the defendant's cellular telephone so that he would be able to execute the search warrant within the 96 hours allowed to do so. *See 720 ILCS 5/108-6, attached hereto, and incorporated herein, as Exhibit L.* It would have been unreasonable for him to have the search warrant signed on Friday, knowing that he would be off the next 48 hours, because that would have only permitted him 48 hours, instead of the statutory 96 hours, to execute the search warrant.

Detective Lambert's delay in obtaining the search warrant was not because he completely ignored it during the nine-day period or because he did not consider it urgent, instead he worked diligently to get all of the information he needed in order to satisfy himself that Winn had committed the offense of public indecency, and to prepare the search warrant. He also waited to obtain the search warrant when he felt comfortable that it could be executed within the statutory 96 hour time period, given his other duties as a detective. Recall, on June 20, Detective Lambert was pulled off the investigation of Winn to participate in a special detail. *See* Exhibit A. Detective Lambert's actions are to be applauded, not mocked as the defendant does in his motion. The delay was caused by his need to be sure that the investigation was complete before he sought to invade the defendant's privacy by searching his cellular telephone.

Winn looks back in hindsight and wrongfully asserts that there was no good reason for the delay. Motion, at 5. But, as noted by the Seventh Circuit:

> But police imperfection is not enough to warrant reversal. With the benefit of hindsight, courts "can almost always imagine some alternative means by which the objectives of the police might have been accomplished," but that does not necessarily meant that the police conduct was unreasonable.

*Burgard*, 675 F.3d at 1034 (quoting *United States v. Sharpe*, 470 U.S. 675, 686-87 (1985)).  This is exactly what Winn wants this Court to do.  Instead, this Court should find that Detective Lambert acted diligently for the same reason that the Seventh Circuit found that the detective in *Burgard* acted reasonably when there was a six-day delay between the probable cause seizure of the defendant's cellular telephone and when the search warrant was obtained:

> [The detective] may theoretically have been able to work more quickly, but his delay was not the result of complete abdication of his work or failure to "see any urgency" as in *Mitchell*, 565 F.3d at 1351.  He wanted to be sure that he had all the information he needed from the seizing officer and he wanted to consult with the AUSA, all the while attending to his other law enforcement duties.  *We do not want to discourage this sort of careful, attentive police work*, even if it appears to us that it could or should have moved more quickly.  Encouraging slapdash police work could lead to a variety of other problems.

*Id.* at 1034 (emphasis added).  The evidence clearly establishes that the nine-day delay was not unreasonable, and therefore did not violate the defendant's Fourth Amendment rights.  Consequently, this claim should be denied.  Moreover, because the defendant's constitutional rights were not violated, his argument that the evidence obtained from the defendant's cellular telephone be suppressed as "fruit of the poisonous tree" likewise fails.  *See Oregon v. Elstad*, 470 U.S. 298, 308 (1985) ("Since there was no actual infringement of the suspect's constitutional rights, the case was not controlled by the doctrine expressed in *Wong Sun* [*v. United States*], 371 U.S. [471 (1963)], that fruits of a constitutional violation must be suppressed.")

B.      The Search Warrant Package Was Not Invalid Because of an Error in the Search Warrant.

The defendant also argues that the search warrant was invalid because it authorized officers to search for evidence related to the offense of Disorderly Conduct, while the complaint for search warrant presented probable cause to search for evidence of Public Indecency.  The defendant asserts, without citing to any case law, that the discrepancy between the two documents

is fatal. It is clear from the search warrant itself that the "disorderly conduct" language was simply a scrivener's error that should not render the search warrant invalid, especially when the entire search warrant is read as one. As noted above, Detective Lambert will testify that, in this case, he typed up the complaint for search warrant and search warrant from a template, leaving certain items blank or marked with "XXX" for the ASA to complete when he or she reviews the documents. Detective Lambert will testify that he typically leaves the offense section blank so that the ASA can determine the appropriate statute based on the facts set forth in the complaint. In this case, ASA Julie Elliot completed the portions of the complaint and search warrant that are in bold. When she did so, she inadvertently listed the offense of "Disorderly Conduct" in the search warrant, rather than the offense of "Public Indecency" as she set forth in the complaint. She also failed to notice that the day set forth in the search warrant was correct as June 30 was a Monday, not a Wednesday. *See* Exhibit H. As well as failing to notice that, instead of the month and date, "XXXXX" was written in that area. After signing the complaint, ASA Elliot notified Detective Lambert that the complaint and search warrant were ready to be picked up.

When Detective Lambert picked up the complaint, he, unfortunately, also failed to notice these errors. Detective Lambert took the complaint and search warrant to the Honorable Judge Jan Fiss who had him swear to the contents of the complaint. Detective Lambert and Judge Fiss then signed the search warrant. Judge Fiss, like ASA Elliot and Detective Lambert, also failed to notice the discrepancy in the offenses, as well as the typographical errors. These errors are a result of using templates to complete complaints and search warrants and, while unfortunate and sloppy, are simple scrivener errors that are indicative of the high volume of cases that pass through the States Attorney's Office every day. These errors should not be fatal to the search warrant in the instant case because it is clear from Detective Lambert's conversation with

Investigator Robertson that the intent of the search warrant, despite the errors, was to allow a search of Winn's cellular telephone for evidence of the offense of Public Indecency. This is the evidence that Detective Lambert instructed Investigator Robertson to search for, and the evidence Investigator Robertson searched for. There was never any misunderstanding on the part of Detective Lambert or Investigator Robertson as to whether they were searching for evidence of Public Indecency or Disorderly Conduct despite the error in the search warrant.

Even with the error in the offense section in the search warrant, there was still probable cause in the complaint to support a search warrant for Disorderly Conduct. The defendant's actions in rubbing and stroking his genitals at the public pool while watching and photographing minor girls in their bikinis were actions done "in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace." *See 720 ILCS 5/26-1(a)(1), attached hereto, and incorporated herein, as Exhibit M.* This was clearly set out in the complaint when Detective Lambert wrote "[t]he juvenile victims . . . reported Nathaniel J. Winn's actions of photographing and/or video recording them without their permission as well as fondling his genitals with his hand while looking at them and being in close proximity *alarmed and disturbed them.*" Exhibit G, at 2. Thus, the defendant's claim that there was no probable cause to support a search warrant for Winn's cellular telephone for evidence of the offense of Disorderly Conduct fails.

Even if the Court finds that the discrepancy between the offense listed in the complaint and that listed in the search warrant is fatal, thus voiding the search warrant, the evidence should not be suppressed because this case fails squarely within the good faith exception, as discussed more fully below.

C.      The Search Warrant Was Not Overly Broad.

The defendant argues that the search warrant was overly broad by authorizing the search of the defendant's cellular telephone for:

> Any or all files contained on said cellular telephone and its SIM Card or SD Card to include but not limited to the calendar, phonebook, contacts, SMS messages, MMS Messages, emails, pictures, videos, images, ringtones, audio files, all call logs, installed application data, GPS information, WIFI information, Internet history and usage, any system files on phone, SIM Card, or SD Card, or any data contained in cell phone, SIM Card or SD Card to include deleted space

related to the offense of Disorderly Conduct.  Exhibit G, at 4.[2]  The Seventh Circuit has instructed that "[t]he particularity requirement of the Fourth Amendment is to be applied with a practical measure of flexibility and *only requires reasonable specificity.*"  *United States v. Shoffner*, 826 F.2d 619, 631 (7th Cir. 1987) (emphasis added).  The purpose of this requirement, as noted by the Seventh Circuit, "is to circumscribe the search, giving notice to both the executing officers and the person on whom the warrant is served of the limits of the officers' authority."  *Id.* at 632.  So, regardless of whether the search was for evidence of Disorderly Conduct or Public Indecency, the search warrant met the particularity requirement because the search was limited by the nature of the offense as well as the information set forth in the complaint, something that the defendant even acknowledges in his motion.  Motion, at 7-8.  His argument fails, however, because he, again, misunderstands the offense of Public Indecency.

The defendant asserts that Detective Lambert "could easily have stated with laser-beam precision the items he sought to seize and where they would likely be found on the cell phone, but simply chose not to."  Motion, at 7-8.  This is simply not true.  While Detective Lambert suspected that there might be images and/or videos of the minor girls taken at the Mascoutah Public Pool on June 18th, there could be a multitude of additional evidence that he is unaware of

_____

[2] As set forth above, it is the Government's position that the offense of Disorderly Conduct was an error in

that could be on the phone that would be evidence related to the offense of Public Indecency. Motion, at 8. The defendant did not commit the crime of Public Indecency by taking pictures of minor girls in their bikinis in a public pool - - he did so by "knowingly engag[ing] in an act of sexual conduct with the intent to arouse or satisfy his sexual desire in that he touched his sex organ while taking photographs with his cell phone of 13 and 14 year old girls at [a public swimming] pool." Exhibit D, at 3. For example, there could have been SMS, MMS messages and/or e-mails to or from the defendant discussing the incident at the pool, or GPS information and/or metadata found on the photographs of the minor girls taken at the swimming pool could provide information corroborating when and where the pictures were taken. In fact, recall that the defendant was charged with Public Indecency despite the fact that no pictures or videos of the minor females were found on Winn's cellular telephone at the time he was charged.

> As noted by the Seventh Circuit:
>
> "[a] search warrant must describe the objects of the search with reasonable specificity, *but need not be elaborately detailed.*" . . . *Nor must the warrant "enable authorities 'to minutely identify every item for which they are searching.'"* . . . "Thus a description is valid if it is as specific as the circumstances and the nature of the activity under investigation permit."

*Id.* at 630-31 (internal citations omitted) (emphasis added). Moreover, "[a] warrant may contain a catchall phrase as long as it sufficiently limits the discretion of the officers in executing the warrant." *United States v. Brown*, 832 F.2d 991, 996 (7th Cir. 1987). Finally, the Seventh Circuit has upheld search warrants authorizing the search of evidence related to a specific crime. *See e.g., United States v. Vitek Supply Corp.*, 144 F.3d 476, 480-81 (7th Cir. 1998) (upholding a search warrant that authorized the seizure of evidence related to possible violations of three statutes).

---

the search warrant caused by the use of a template.

In light of this case law, the notion that the defendant should have limited the search warrant to just pictures and/or videos of the minor girls taken at the swimming pool is absurd. Following this line of reasoning, would one who is searching for evidence of drug trafficking limit the search warrant to only evidence of controlled substances, omitting evidence of ledgers, drug paraphernalia, cellular telephones etc., that could also be used to prove that offense? Of course not. Yet, that is what the defendant suggests should have occurred in this case. The defendant's argument that the evidence authorized to be seized in the search warrant violated the particularity requirement fails because the search warrant "sufficiently limit[ed] the discretion of the officers in executing the warrant." *Brown*, 832 F.2d at 996. This claim therefore also fails.

D.     The Search of Winn's Cellular Telephone Did Not Exceed the Scope of the Search Warrant.

Finally, the defendant argues that the scope of the search warrant was exceeded when Investigator Robertson used a forensic extraction device to search his cellular telephone. Initially, the defendant asserts that Investigator Robertson did not search for either evidence of Public Indecency or Disorderly Conduct because he did not find the pictures of the minor females taken at the pool. Motion, at 8. Specifically, he asks "why didn't he even bother to find them?" *Id.* The implication that Investigator Robertson was not searching the cellular telephone for evidence of either offense because he did not find the pictures is simply ridiculous. Even more ridiculous is the implication that Investigator Robertson was not looking for the pictures because he did not "bother to find them." That makes absolutely no sense. Apparently, based on defendant's next statement that "[l]est there be any lingering doubt about what Robertson was looking for on Defendant's cell phone, Lambert's manual search of the cell phone six days later puts the issue to rest once and for all," the defendant believes that Investigator Robertson was deliberately looking

for child pornography.  Motion, at 9.  After this statement, the defendant notes that Detective Lambert was able to find the photographs of the minor girls taken at the pool during a manual search of the cellular telephone, concluding "[h]e didn't find any child pornography though, but that shouldn't be a surprise, because he wasn't looking for it."  *Id.*

The search warrant authorized Investigator Robertson to search the defendant's cellular telephone for evidence related to the offense of Public Indecency (or Disorderly Conduct). Detective Lambert requested that the cellular telephone be forensically examined.  As set forth above, Investigator Robertson examined the cellular telephone using a Cellebrite UFED Touch machine so that he could ensure that the original data on the cellular telephone is not altered or manipulated in any way - - something that cannot be guaranteed if the cellular telephone is rmanually searched.  The Cellebrite device allowed him to extract the data from the cellular telephone and put it in a report that is easy to read and understand.  The report is put in .pdf format so that it also cannot later be altered or manipulated.  The device extracts not only images from the cellular telephone, but all data that is actively stored on the cellular telephone.  Because of the way the extraction report is generated, all of the images were plainly visible.  One did not have to open any file to see the images - - they were all there in plain view.

Contrary to the defendant's representation, the Cellebrite UFED Touch machine is not "only interested in finding and documenting child pornography."  Motion, at 11.  The Cellebrite machine does not flag potential child pornography like some other forensic examination programs.  It only pulls data from the cellular telephone.  The fact that the extraction report did not capture the picture of the minor girls taken at the public pool is not evidence that Investigator Robertson was only looking for child pornography when he executed the search warrant.  There is absolutely no evidence, other than the defendant's very active imagination, to support any

inference that Investigator Robertson was searching for child pornography, rather than evidence of Public Indecency, as he set forth in his report. *See* Exhibit I.

Furthermore, the suggestion that Investigator Robertson should have only conducted a manual search of the cellular telephone is absurd. Detective Lambert specifically sought out someone to do a forensic examination of the cellular telephone to find evidence of Public Indecency. Was he in on the plot also? Did he secretly tell Investigator Robertson to ignore the pictures of the minor girls and look only for child pornography? After all, if he only wanted a manual search done, he could have done it himself. A manual search of the cellular telephone would not have preserved the data on the phone, a primary goal of any forensic examiner. In addition, anything recovered from the cellular telephone would have to be saved to some device and put in a format so that it can be used as evidence in an eventual trial.

The defendant attempts to distinguish *United States v. Mann*, 592 F.3d 779 (7th Cir. 2010), in which the Seventh Circuit found that the use of FTK software alone did not exceed the scope of the search warrant that allowed a search for images on a computer. In Mann, the defendant argued that the agents exceeded the scope of the search warrant, which allowed agents to search for "images of women in locker rooms and other private places," when the agent used FTK software to conduct the search. *Id.* at 782. In *Mann*, the Seventh Circuit recognized that:

> The problem with applying this principle (the particularity requirement) to computer searches lies in the fact that such images could be nearly anywhere on the computers. Unlike a physical object that can be immediately identified as responsive to the warrant or not, computer files may be manipulated to hide their true contents.

*Id.* In ruling that the use of the FTK software alone did not exceed the scope of the search warrant, the Seventh Circuit noted that the detective used the software to "index and catalogue the files into a viewable format." *Id.* at 784. It also noted that, because the detective was searching

for "images," "he could not search thoroughly [] without stumbling upon Mann's extensive collection of child pornography." *Id.* at 783. While the defendant attempts to distinguish *Mann* in his favor, this case clearly shows that Investigator Robertson's use of the Cellebrite UFED Touch machine, by itself, did not exceed the scope of the search warrant. Especially when one considers that the FTK software's "KFF Alert" system is specifically designed to identify files containing child pornography while the Cellebrite machine is not. As with the detective in Mann, Investigator Robertson used the Cellebrite software to extract data from the cellular telephone so that it can, *inter alia*, be put into a format that is easy to understand and that cannot be manipulated. It is difficult to see how the use of the software, by itself, exceeded the scope of the warrant.

The defendant's conspiracy theory - - Lambert describing the items to be seized in "unnecessarily broad terms" and Robertson's use of the forensic extraction device - - as a basis for arguing that the Investigator Robertson exceeded the scope of the search warrant again rests on his repeated mistake as to what constitutes Public Indecency. Evidence related to the offense of Public Indecency is not just the images of the minor females taken at the public pool on June 18th, it can be other types of evidence as well, as set forth above. That is why the defendant's extraction report did not just extract images, it extracted all of the data from the cellular telephone, so that any evidence related to the offense of Public Indecency could be recovered. This evidence could have been found in the SMS message, the MMS message, e-mails, audio files, GPS information, etc., *not just in the images of the minor girls taken at the public pool.* As with the defendant's argument that the items listed to be seized in the search warrant violated the particularity requirement, this argument also fails.

E.     Detective Lambert's Actions Are Covered By the Good Faith Exception.

The defendant argues that the good faith exception cannot save the search warrant in this case for three reasons, all of which are baseless, as discussed in more detail below. Recognizing that the deterrence effect of the exclusionary rule loses much of its force when an officer acts in good faith, the Supreme Court held that evidence will not be suppressed, even if a search warrant is later determined to be invalid for some reason, when "an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." *United States v. Leon*, 468 U.S. 897, 919-20 (1984). The Supreme Court recognized, however, that there were three exceptions to this rule where suppression would still be an appropriate remedy: (1) if the magistrate or judge was misled by information provided in the affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth, (2) the issuing judge or magistrate acted as a rubber stamp, or (3) the warrant is so facially deficient that the executing officers could not reasonably presume it to be valid. *Id.* at 923.

The defendant's assertion that Detective Lambert was reckless because he did not specify the items of evidence he sought to seize with sufficient particularity "when he unquestionably could have and willfully chose not to," is simply not true. Detective Lambert had no idea of knowing what evidence related to the offense of Public Indecency was on Winn's cellular telephone when he wrote the complaint for search warrant and warrant. Limiting the search to images and/or videos of the minor girls taken at the public pool would have been absurd because this was not the only evidence that could have been on the cellular telephone to corroborate this crime. Again, it is not just the images of the minor girls that constituted a violation of the law, it was the fondling of his genitals. Furthermore, for the reasons set forth more fully above in the section addressing the particularity requirement, there is no evidence that Detective Lambert did anything other than act in objective good faith when he obtained the search warrant.

The defendant's second argument - - that the complaint was so lacking in indicia of probable cause to believe that evidence of Disorderly Conduct existed on Winn's cellular telephone that it was objectively unreasonable for the officers to have relied on it - - again fails. As set forth above, there was probable cause in the complaint for search warrant to establish the offense of disorderly conduct when Detective Lambert wrote that "[t]he juvenile victims . . . reported Nathaniel J. Winn's actions of photographing and/or video recording them without their permission as well as fondling his genitals with his hand while looking at them and being in close proximity *alarmed and disturbed them*." Exhibit G, at 2. Thus, this argument also fails.

Finally, the defendant claims that the judge acted as a rubber stamp by signing a search warrant authorizing a search for evidence of one crime when the complaint established probable cause for a different offense. This argument also fails because, as set forth above, it is clear from the other errors in the search warrant, that the difference in the offense listed in the search warrant from that listed in the complaint for search warrant was simply a scrivener's error caused by the use of a template, and indicative of the high volume of cases handled by state courts every day. In addition, there was probable cause in the complaint for search warrant for either offense. This corroborates Detective Lambert's expected testimony that he left the offense section blank for the ASA to fill out. No one noticed the error with the different offenses, as well as the typographical error with the date in the search warrant, before the search warrant was signed. This is not evidence, however, that Judge Fiss acted as a rubber stamp for Detective Lambert. Because the evidence clearly shows that neither Detective Lambert nor Investigator Robertson "engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right," the exclusionary rule should not applied in this case.

WHEREFORE, the United States respectfully prays that the Court deny Defendant's Motion to Suppress Evidence.

Respectfully submitted,

STEPHEN R. WIGGINTON
United States Attorney


s/*Angela Scott*
ANGELA SCOTT
Assistant United States Attorney
Nine Executive Drive
Fairview Heights, IL  62208
(618) 628-3700
Fax:  (618) 628-3730
E-mail: Angela.Scott@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA,       )
                                )
              Plaintiff,         )
                                )
       vs.                      )       CRIMINAL NO. 14-30169-NJR
                                )
NATHANIEL J. WINN,              )
                                )
              Defendant.        )

**CERTIFICATE OF SERVICE**

I hereby certify that on December 12, 2014, I electronically filed the **Government's Response to Defendant's Motion to Suppress Evidence and Memorandum of Law in Support Thereof** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

AFPD Todd Schultz

Respectfully submitted,

STEPHEN R. WIGGINTON
United States Attorney

s/*Angela Scott*
ANGELA SCOTT
Assistant United States Attorney
Nine Executive Drive
Fairview Heights, IL 62208
(618) 628-3700
Fax: (618) 628-3730
E-mail: Angela.Scott@usdoj.gov