## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 14–CR-30169-NJR** |
| | ) | |
| | ) | |
| **NATHANIEL J. WINN,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM AND ORDER</u>

**ROSENSTENGEL, District Judge:**

This matter is before the Court on the Motion to Suppress Evidence filed by Defendant Nathaniel J. Winn on November 14, 2014 (Doc. 21). Winn seeks to suppress the evidence obtained by law enforcement officers from his cell phone. The motion has been fully briefed by the parties (Docs. 21, 22, 27, 30). The Court heard oral arguments and accepted documentary evidence at a hearing on January 6, 2015, and the motion was taken under advisement (Doc. 31). Having considered the arguments made by both parties and the evidence in the record, for the following reasons, Winn's motion to suppress is granted in part and denied in part.

### BACKGROUND

On Friday, June 20, 2014, a complaint was made to the Mascoutah Police Department that two days earlier, on June 18, 2014, an unknown adult male was using his cell phone to photograph or videotape a group of thirteen and fourteen-year-old girls in their swimsuits without their permission at the Mascoutah Public Pool (Doc. 27-1). While taking the pictures, this unknown adult male was rubbing his genitals on the exterior of

his swim trunks (*Id.*). The man was later identified as Defendant, Nathaniel Winn (Doc. 27-1; Doc. 22-1).

The officers were concerned that Winn would find out that he was being investigated for the incident at the pool and destroy the evidence on his phone (Doc. 22-1). So, on Saturday, June 21, Detective Jared Lambert went to Winn's house to speak with him (*Id.*). At that time, Detective Lambert believed he had probable cause to seize and search Winn's phone for evidence of public indecency (*Id.*). Winn initially refused to give Detective Lambert his phone, but later consented to the seizure (*Id.*). Winn informed his mother where his cell phone was located in the house, and she went inside and retrieved the phone for Detective Lambert (*Id.*).

Instead of immediately applying for a search warrant to search the contents of Winn's cell phone, Detective Lambert decided to continue the investigation in an effort to speak with all of the individuals involved in the incident (*Id.*). Detective Lambert was off work on Sunday, June 22, so no work was done to further the investigation that day. The following day, Monday, June 23, Detective Lambert interviewed five witnesses, Sergeant Kevin McGinnis interviewed two witnesses, and Sergeant Matt Steinkamp interviewed one witness (*See* Doc. 27-4). Altogether, the run time of the video of these eight witness statements is no more than 45 minutes (*see id.*). On Tuesday, June 24, Detective Lambert was at an all-day training, and he was unable to do anything to further the investigation. Sergeant Steinkamp interviewed two more witnesses, however, and Officer Kyle Donovan interviewed one witness (*see id.*). Altogether the run time of the video of these three witness statements is no more than 21 minutes (*see id.*).

Detective Lambert was at an all-day training again on Wednesday, June 25. Neither he nor any of the other officers did anything to investigate the case against Winn on that day. On Thursday, June 26, Detective Lambert typed the narratives of the five videotaped witness statements that he took. On Friday, June 27, Detective Lambert continued typing up the narratives. Altogether, he wrote approximately seven pages of narrative report.

Detective Lambert also completed the first draft of the complaint for a warrant to search Winn's cell phone on Friday, June 27. Lambert testified that none of the other officers who assisted in the investigation could apply for the search warrant because, as part of his position as Detective, he is responsible for applying for all search warrants. The complaint for the search warrant is just over two pages long (Doc. 22-2). Approximately one-and-a-half pages are original content and set forth the facts upon which Detective Lambert believed he had probable cause to search the phone (*see* Doc. 22-2). Detective Lambert wrote, in pertinent part, that a woman called the police department on June 20, 2014, to report that, two days prior, a man was taking pictures of her daughter and her friends at the pool and fondling his genitals through his shorts (*Id.*). A number of witnesses, including the four victims, reported that Winn followed them around at the pool, took pictures or videos of them without their permission, and fondled his genitals on the exterior of his swim trunks while in close proximity to them (*id.*). The four victims also reported that they were alarmed and disturbed by Winn's actions (*Id.*).

In the complaint for the search warrant, Detective Lambert inserted a list of items to be seized from the phone by using a template provided by the St. Clair County State's Attorney's Office. That template provides for the seizure of

any or all files contained on said cell phone and its SIM Card or SD Card to include but not limited to the calendar, phonebook, contacts, SMS messages, MMS messages, emails, pictures, videos, images, ringtones, audio files, all call logs, installed application data, GPS information, WIFI information, internet history and usage, any system files on phone, SIM Card, or SD Card, or any data contained in the cell phone, SIM Card or SD Card to include deleted space.

(*Id.*). Detective Lambert then submitted the draft of the complaint to the St. Clair County State's Attorney's Office to review and to fill in the appropriate offense to be charged.

On Saturday, June 28, and Sunday, June 29, Detective Lambert was off work and nothing more was done to further the investigation or to obtain the search warrant. On Monday, June 30, Detective Lambert had the complaint and the search warrant reviewed and signed by assistant State's Attorney ("ASA") Julie Elliot. ASA Elliot indicated on the complaint to the search warrant that the search of the phone was for evidence related to the offense of public indecency (Doc. 22-2). She indicated on the search warrant, however, that the search of the phone was for evidence related to the crime of disorderly conduct (Doc. 22-3). Neither Detective Lambert nor ASA Elliot noticed the discrepancy. ASA Elliot did not make any edits to the template of the items to be seized from the phone (Doc. 22-2; Doc. 22-3). The complaint and search warrant were then presented to Circuit Judge Jan Fiss at the state trial court in St. Clair County, Illinois. Judge Fiss signed both the complaint and search warrant. He also did not notice the discrepancy between the complaint and the search warrant.

The following day, July 1, 2014, Detective Lambert met with Jason Robertson, an investigator with the St. Clair County Sheriff's Department who is in charge of cell phone extractions (Doc. 22-4; Doc. 27-6). Lambert told Investigator Robertson that the cell phone was believed to contain evidence regarding a public indecency case (Doc. 22-4).

Investigator Robertson used a Cellebrite UFED Touch machine to extract data from Winn's cell phone and to generate a report detailing what was extracted (*Id.*). Robertson did not manually search Winn's cell phone. Notably, the extraction report did not contain the pictures of the girls at the pool taken by Winn on June 18, 2014 (*see id.*). It did, however, contain pornographic images of children and three non-pornographic videos of a minor female taken at a residence on June 1, 2014 (*Id.*; Government's Exhibit 6—Bates stamped pages 57–60). After observing the child pornography, Robertson "did a manual search on the phone and discovered several of the photographs had been downloaded from the KIK application" (Doc. 22-4). Robertson informed Detective Lambert about the child pornography on the phone, and the two of them went to Winn's home where Winn's mother gave them consent to search the home (*Id.*)[1] Detective Lambert also spent time identifying the minor female in the three videos and speaking with her parents (Government's Exhibit 6—Bates stamped pages 57–60).

On July 3, 2014, Winn was charged in state court in St. Clair County, Illinois, with one misdemeanor count of public indecency for "knowingly engag[ing] in an act of sexual conduct with the intent to arouse or satisfy his sexual desire in that he touched his sex organ while taking photographs with his cell phone of 13 and 14 year old girls at [a public swimming] pool" (Doc. 27-4; Government's Exhibit 5—Bates stamped pages 61–62). Based on data extracted from his cell phone, he also was charged with twenty-one felony counts of child pornography and three felony counts of unlawful videotaping of a minor (*Id.*).

Four days later, on July 7, 2014, Detective Lambert decided to "manually look

---

[1] Detective Lambert's police report concerning these events was not submitted to the Court.

through the cell phone" to try to find the pictures of the girls taken by Winn at the Mascoutah Public Pool on June 18, 2014 (Doc. 22-6). From the home screen of the phone, he clicked "Apps," then "Gallery," then "Camera" (*Id.*). There he observed nine images of girls in swimsuits taken on June 18, 2014 (*Id.*).

This case came to federal court after the St. Clair County State's Attorney's Office referred it to the United States Attorney's Office to pursue federal child pornography charges against Winn. He was indicted in the Southern District of Illinois on September 17, 2014, on two counts of receipt of visual depictions of minors engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(2) (Doc. 1).

DISCUSSION

Winn argues that the evidence obtained from his cell phone should be suppressed because (1) the seizure of his cell phone became unreasonable when Detective Lambert waited nine days to obtain the search warrant; (2) Detective Lambert did not have probable cause to believe that evidence of disorderly conduct would be found on the cell phone; (3) the search warrant was overbroad and lacked sufficient particularity; and (4) the search of the cell phone exceeded the scope of the search warrant (Docs. 21, 22).

The Court begins with a brief overview of Fourth Amendment law before discussing whether a Fourth Amendment violation occurred and whether suppression of the evidence is warranted.

## A. The Fourth Amendment

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. In order to "compel respect for the constitutional guaranty," the

United States Supreme Court created the exclusionary rule. *Davis v. United States*, 131 S.Ct. 2419, 2426 (2011) (citing *Elkins v. United States*, 364 U.S. 206, 217 (1960)). When applicable, that rule forbids the use of evidence obtained by police officers in violation of the Fourth Amendment. It is well established, however, that a violation of the Fourth Amendment does not necessarily mean that the exclusionary rule applies. *Herring v. United States*, 555 U.S. 135, 140 (2009) ("We have repeatedly rejected the argument that exclusion is a necessary consequence of a Fourth Amendment violation.") It applies only when the benefits of deterring future Fourth Amendment violations outweighs the heavy costs of suppressing evidence. *Herring*, 555 U.S. at 141. "The principal cost of applying the rule is, of course, letting guilty and possibly dangerous defendants go free." *Herring* 555 U.S. at 141 (citing *Leon*, 468 U.S. at 908); *Davis*, 131 S.Ct. at 2427 ("Exclusion exacts a heavy toll on both the judicial system and society at large" because "its bottom-line effect, in many cases, is to suppress the truth and set the criminal loose in the community without punishment.") As a result, exclusion "has always been our last resort, not our first impulse." *Herring*, 555 U.S. at 140 (citing *Hudson v. Michigan*, 547 U.S. 586, 591 (2006)).

**B. Delay in Obtaining the Search Warrant**

Winn concedes that the initial seizure of his phone was reasonable, but argues that the seizure became unreasonable when the police waited nine days to obtain a search warrant (*Id.* at pp. 2–5). The Court disagrees.

According to Fourth Amendment jurisprudence, the police were required to obtain the search warrant within a reasonable period of time after seizing the phone. *United States v. Burgard*, 675 F.3d 1029, 1032 (7th Cir. 2012) (citing *Segura v. United States,* 468 U.S.

796, 812 (1984) ("[A] seizure reasonable at its inception because based on probable cause may become unreasonable as a result of its duration.")) "There is unfortunately no bright line past which a delay becomes unreasonable." *Burgard*, 675 F.3d at 1032. Instead, courts have to assess the reasonableness of a delay on a case-by-case basis and in light of all the facts and circumstances. *United States v. Christie*, 717 F.3d 1156, 1162 (10th Cir. 2013); *United States v. Mitchell*, 565 F.3d 1347, 1351 (11th Cir. 2009) (citing *United States v. Mayomi*, 873 F.2d 1049, 1054 n.6 (7th Cir. 1989)). To determine whether the seizure became unreasonable, courts must weigh "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Burgard*, 675 F.3d at 1032 (citing *United States v. Place*, 462 U.S. 696, 703 (1983)); *see also Illinois v. McArthur*, 531 U.S. 326, 331 (2001) (courts are to "balance the privacy-related and law enforcement-related concerns to determine if the intrusion was reasonable").

On the individual's side of the balance, the most relevant factor to consider is the individual's possessory interest in the seized object. *Burgard*, 675 F.3d at 1033. "The longer the police take to seek a warrant, the greater the infringement on the person's possessory interest will be, for the obvious reason that a longer seizure is a greater infringement on possession than a shorter one." *Id.*; *Mitchell*, 565 F.3d at 1352 ("[T]he sooner the warrant issues, the sooner the property owner's possessory rights can be restored if the search reveals nothing incriminating.")

On the state's side of the balance, one of the key factors to consider is the state's basis for the seizure. *Burgard*, 675 F.3d at 1033. The state has a stronger interest in seizures

resting on probable cause than those resting on reasonable suspicion, and thus a greater delay will be tolerated in the case of probable-cause seizures. *Id.* The Court must also "take into account whether the police diligently pursued their investigation." *Id.* (citing *Place*, 462 U.S. at 709). "When police act with diligence, courts can have greater confidence that the police interest is legitimate and that the intrusion is no greater than reasonably necessary." *Burgard*, 675 F.3d at 1033 (citing *McArthur*, 531 U.S. at 331). On the other hand, "[w]hen police neglect to seek a warrant without any good explanation for that delay, it appears that the state is indifferent to searching the item and the intrusion on an individual's possessory interest is less likely to be justifiable." *Burgard*, 675 F.3d at 1033 (citations omitted).

Here, Winn undoubtedly had a strong interest in possessing his cell phone. As the Supreme Court recently noted, cell phones are a unique possession in which individuals have a particularly powerful possessory interest. *Riley v. California*, 134 S.Ct. 2473, 2484 (2014) ("[Modern cell phones] are now such a pervasive and insistent part of daily life that the proverbial visitor from Mars might conclude they were an important feature of human anatomy.") *See also Burgard*, 675 F.3d at 1034 ("We acknowledge that Burgard had a strong interest in possessing his cell phone.") A smart phone, like Winn's, is not just a telephone. It is a "minicomputer" capable of storing an immense amount of personal and sensitive information. *Riley*, 134 S. Ct. at 2489, 2490. In this instance, we know that Winn's cell phone was his telephone as well as his calendar, his rolodex, his messaging service, his camera, his photo album, his video recorder, and his video library (*see* Doc. 22-5; Doc. 27-9). It very well might have also served as his internet access, his diary, his to-do list, his

email, his music collection, his television, his library, his navigation system, and any other number of tools for managing his life depending on what apps he had downloaded to his phone. *Riley*, 134 S. Ct. at 2489, 2490 (noting the many functions of a smart phone and that the average smart phone user has installed thirty-three apps).

That being said, Winn's possessory interest in the phone was diminished by the fact that he never revoked his consent or contacted the Mascoutah Police Department to ask about the progress of the investigation or to seek the return of his phone. *See United States v. Christie*, 717 F.3d 1156, 1163 (10th Cir. 2013) (finding no significant invasion of wife's possessory interests in the family computer where her husband consented to the seizure, and she did not object at that time or in the following weeks or months); *United States v. Stabile*, 633 F.3d 219, 236 (3d Cir. 2011) (finding defendant's possessory interests in his hard drives were diminished because he did not ask for their return for more than 18 months after they were seized). *See also Burgard*, 675 F.3d at 1033 (noting that a person checking on the status of the seizure or looking for assurances that the item would be returned is evidence "that the seizure in fact affected her possessory interests").

Shifting to the other side of the balance, the state also had a strong interest in the cell phone because the police had probable cause to believe that it contained evidence of a crime. But the police did not act with any sense of urgency in obtaining the search warrant. It appears to the Court that at the time the phone was seized on the afternoon of Saturday, June 21, there was probable cause to obtain a search warrant for the phone.[2]

---

[2] Detective Lambert stated in the police report from June 21, 2014, that he "believed probable cause had been established in this investigation . . . against Winn for illegally photographing and/or videotaping underage females at the pool" (Doc. 22-1). Detective Lambert similarly

Nevertheless, after seizing the phone, Detective Lambert decided to continue investigating in order to establish further probable cause before applying for the search warrant. Although the additional investigation seems unnecessary to the Court, for the sake of this discussion, the Court will not second-guess Detective Lambert's decision. *See Burgard*, 675 F.3d at 1034 ("We do not want to discourage this sort of careful, attentive police work, even if it appears to us that it could or should have moved more quickly.")

Even accepting that the additional investigation was necessary, it is difficult to understand why it took nine days to apply for the search warrant. There were eleven witnesses who were interviewed, but the interviews were not complex or time-consuming. All of the witnesses were local children and employees of the pool who fully cooperated with the police. Altogether, the run time of their videotaped statements is just over an hour, and the narrative reports total only sixteen type-written pages. And, most notably, the task of interviewing the witnesses and documenting their statements was split between five officers. Over a third of the Mascoutah Police Department was involved in this investigation,[3] but it still took nine days to obtain the search warrant.

Detective Lambert explained that during the nine-day period at issue, he was off work three of those days and at an all-day training for two. He also explained that no other officer in the Department could obtain the search warrant because that task fell solely to him. Neither explanation is persuasive. No evidence was offered that the training was mandatory or that it could not have been postponed. *See United States v. Mitchell*, 565

---

testified at the hearing that, at the time he went to Winn's house on June 21, he believed he had probable cause for a search warrant for public indecency or disorderly conduct.

[3] Detective Lambert testified at the hearing that the Mascoutah Police Department has thirteen officers. He and four other officers took part in this investigation.

F.3d 1347, 1352 (11th Cir. 2009). Furthermore, the fact that the Mascoutah Police Department delegated the task of obtaining search warrants solely to Detective Lambert could easily be seen as a failure on the Department's part "to staff its offices adequately or to give officers sufficient resources to process warrant applications." *Burgard*, 675 F.3d at 1035. Such a choice on the part of the Department cannot justify an unreasonable delay in obtaining a search warrant. *See id.* Even if the Court accepted that Detective Lambert could not work on the case during his off days or while he was at the training, that still means that it took him—a detective with over ten-years' experience—three full days to conduct his portion of the investigation regarding a misdemeanor crime[4] and prepare a two-page warrant application, only half of which contained original content. This timeline is a strain on the imagination.

While Detective Lambert undoubtedly could have worked more quickly, case law indicates that his pace did not violate the Fourth Amendment. In the case of a seizure based on probable cause, the Seventh Circuit held that the six-day delay between the seizure of the defendant's cell phone and obtaining a search warrant was not unreasonable, even though the police officer was not diligent because the officer's "delay was not the result of complete abdication of his work or failure to 'see any urgency.'" *Burgard*, 675 F.3d at 1034 (citing *Mitchell*, 565 F.3d at 1351). In the case of a seizure based on consent, the Third Circuit held that the three-month delay between the seizure of the defendant's computer and obtaining a search warrant was not unreasonable because defendant never asked for the computer back, and the lead case agent responsible for

---

[4] Detective Lambert was responsible for interviewing five of the eleven witnesses and typing eight of the sixteen pages of narrative report.

seeking the warrant had to attend to other and higher law enforcement priorities. *United States v. Stabile*, 633 F.3d 219, 236 (3d Cir. 2011). For those same reasons, the Tenth Circuit held that a five-month delay between the consent seizure of the defendant's computer and obtaining a search warrant was not unreasonable. *United States v. Christie*, 717 F.3d 1156, 1163–64 (10th Cir. 2013).

The facts and circumstances of this case leave it comfortably nestled somewhere in the middle of *Burgard*, *Stabile*, and *Christie*. Winn consented to the seizure of his cell phone, he never asked for it back, and while Detective Lambert worked slowly, there is no evidence that he completed abdicated his work or failed to see the urgency in acting.

In sum, after balancing the interests at stake, the Court concludes that the nine-day delay between seizing Winn's cell phone and obtaining a search warrant was avoidable, but not unreasonable. Accordingly, the portion of Winn's motion to suppress related to the reasonableness of the delay in obtaining the search warrant is denied.

## C. Probable Cause

Winn next argues that the search warrant was not supported by probable cause (Doc. 22, pp. 5–6). He points out that the complaint for the search warrant presented probable cause to search the phone for evidence of public indecency, but the warrant authorized a search of evidence of an entirely different crime: disorderly conduct. He argues that the discrepancy is fatal, because the complaint did not allege facts to establish probable cause to search for evidence of disorderly conduct. Again, the Court disagrees.

Generally speaking, minor errors are not fatal to an otherwise valid search warrant, especially when the errors are attributable to the judge or the government attorney. *See United States v. Smith*, 720 F.3d 1017, 1020 (8th Cir. 2013) (search warrant was not facially

invalid even though authorizing judge misdated the warrant); *United States v. Waker*, 534 F.3d 168, 171–72 (2d Cir. 2008) (search warrant not invalid even though authorizing judge wrote the wrong year when listing the deadline for executing the warrant); *United States v. Lowe*, 516 F.3d 580, 584 (7th Cir. 2008) (search warrant was not invalid where inaccuracies in affidavit supporting warrant were due to from poor editing by district attorney's office).

Based on a review of the evidence, the Court concludes that listing disorderly conduct as the relevant offense on the search warrant was an unintentional error. The police reports categorized the incident as public indecency (*see, e.g.,* Docs. 27-1, 22-1); Detective Lambert testified that he believed he had probable cause to obtain a warrant to search for evidence of public indecency; the State's Attorney's Office listed public indecency as the relevant offense on the complaint in support of the search warrant (Doc. 22-2); Detective Lambert also testified that he was never aware that the warrant referred to an offense other than public indecency, and he understood at all times that the intent of the warrant was to search for evidence of public indecency; and the State's Attorney's Office charged Winn with public indecency, not disorderly conduct, just days after the warrant was issued. Simply put, the only time the words "disorderly conduct" appear anywhere in the record is on the search warrant. The only logical conclusion to be drawn is that doing so was a mistake. And the mistake is attributable solely to the State's Attorney's Office, not the police, because the State's Attorney's Office was responsible for filling in the offense section on the complaint and the search warrant (Doc. 27, p. 16). As the Seventh Circuit noted, "[w]hile careless drafting by government attorneys is indeed

problematic, it is not tantamount to police misconduct that rises to the level of disregard for citizens' Fourth Amendment rights." *Lowe*, 516 F.3d at 584.

Winn has conceded that probable cause existed to issue the warrant for public indecency. Accordingly, the fact that the warrant listed a different offense is not fatal to the warrant's validity. The exclusionary rule does not serve to deter police officers "from obtaining warrants based on accurate information that is reported to the issuing state court judge in a somewhat slipshod manner." *Lowe*, 516 F.3d at 584–85. *See also United States v. Meek,* 366 F.3d 705, 713 (9th Cir. 2004) (declining to invalidate search warrant on the ground that "the statute violated . . . differed from the statute listed in the affidavit," where "the affidavit established probable cause as to a violation of California law and the items sought under the warrant corresponded to that probable cause determination."); *United States v. Fruchter*, 104 F. Supp. 2d 289, 307 (S.D.N.Y. 2000) (denying motion to suppress where warrant referred to the wrong statute because the affidavit established probable cause to issue the warrant).

Assuming the opposite is true, and the warrant only authorized a search for evidence of disorderly conduct, the Court finds that the facts alleged in the complaint were sufficient to establish probable cause to believe that Winn's cell phone contained evidence of disorderly conduct. In Illinois, to commit the offense of disorderly conduct, a person must engage in conduct that: (1) is unreasonable; (2) alarms or disturbs another; and (3) threatens to provoke or provokes a breach of the peace. *Reher v. Vivo*, 656 F.3d 772, 775 (7th Cir. 2011) (citing 720 ILL. COMP. STAT. 5/26-1(a)(1)). Winn concedes that "it is beyond dispute that he alarmed/disturbed the girls at the pool," however, he argues that

the complaint does not set forth any facts suggesting that a breach of peace occurred (Doc. 30, pp. 7–8). His argument is unpersuasive.

The Seventh Circuit has recently endorsed the definition of "breach of peace" contained in the Restatement (Second) of Torts as "a public offense done by violence, or one causing or likely to cause an immediate disturbance of public order." *Sroga v. Weiglen*, 649 F.3d 604, 607 (7th Cir. 2011) (citing RESTATEMENT (SECOND) OF TORTS § 116 (1965)); *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014). State and federal courts in Illinois have sustained arrests and upheld convictions for disorderly conduct based on a disturbance of public order where a suspect videotaped other people under suspicious circumstances or directed lewd remarks or conduct at a child.[5] Given that, it is easy to find that the state court judge in this case had a substantial basis for concluding that probable cause existed to arrest Winn for disorderly conduct and to believe that evidence of that crime was contained on Winn's cell phone. The complaint indicates that Winn was following a group of young teenage girls, photographing or videotaping them without

---

[5] *See Reher v. Vivo*, 656 F.3d at 776–77 (probable cause existed to arrest defendant for disorderly conduct where park-goers alleged suspect was videotaping children in park, mother accused suspect of taping their daughter, and officer was aware of long history of serious domestic disputes between suspect and mother, including his distributing nude pictures of mother and throwing a rock through her window); *Graham v. Vill. of Niles*, Case No. 02 C 4405, 2003 WL 22995159, at *7 (N.D. Ill. Dec. 16, 2003) (probable cause existed to arrest defendant for disorderly conduct when he was videotaping women's breasts in the parking lot at a Target store and a woman called the cops); *People v. Shorter*, 2012 IL App (3d) 100721-U, ¶¶ 13, 21 (Ill. App. Ct. 2012) (unpublished) (upholding conviction for disorderly conduct where defendant initiated unwelcome and uncomfortable conversation with a twelve-year-old girl at the public library, including asking whether anyone had talked to her about her menstrual cycle, and the girl went home and told her mother); *People v. Blair*, 748 N.E.2d 318, 322 (Ill. App. Ct. 2001) (noting that police arrested defendant for disorderly conduct because he was videotaping children in a public zoo but not discussing whether the defendant's arrest was supported by probable cause); *People v. Allen*, 680 N.E.2d 795, 800 (Ill. App. Ct. 1997) (upholding conviction for disorderly conduct where defendant made unwelcome and offensive sexual remarks to two teenage boys at the store where the boys worked; one of the boys hid in the back room at the store to avoid further contact with defendant, and the other was afraid to leave work alone.)

their permission, and rubbing his genitals. The Court cannot think of conduct *more likely* to cause an immediate disturbance of public order than skulking around and surreptitiously taking pictures of children in bathing suits while fondling yourself. Frankly, Winn is lucky that none of the girls' parents were present at the pool, or it is exceedingly likely that the breach of peace would have gone beyond a disturbance of public order and involved some measure of violence.

In sum, mistakenly listing disorderly conduct as the relevant offense in the search warrant was an error that does not amount to a Fourth Amendment violation because the warrant was supported by probable cause. Accordingly, the portion of Winn's motion to suppress related to probable cause is denied.

**D. Overbreadth and Particularity of the Search Warrant**

Winn next argues that the search warrant violated the Fourth Amendment because it failed to state with particularity the items permitted to be seized (Doc. 22, pp. 6–8). It authorized the seizure of "any and all files" that constituted evidence of disorderly conduct which, according to Winn, essentially invited the police to conduct an illegal general search of his cell phone (*Id.*). The Court agrees with Winn on this point.

The Fourth Amendment prohibits general search warrants and requires that a warrant describe, with particularity, the place to be searched and the persons or things to be seized. U.S. CONST. amend. IV. The purpose of the particularity requirement is to "protect persons against the government's indiscriminate rummaging through their property" and to "[prevent] the searching for and seizure of items that there is no probable cause to believe are either contraband or evidence of a crime" *United States v. Jones*, 54 F.3d 1285, 1289-90 (7th Cir. 1995) (citing *Coolidge v. New Hampshire,* 403 U.S. 443,

467 (1971)); *United States v. Sims*, 553 F.3d 580, 582 (7th Cir. 2009) (citing *Maryland v. Garrison*, 480 U.S. 79, 84–85 (1987)). "By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Garrison*, 480 U.S. at 84; *United States v. Vitek Supply Corp.*, 144 F.3d 476, 481 (7th Cir. 1998) ("This requirement . . . ensures that the scope of a search will be confined to evidence relating to a specific crime that is supported by probable cause.")

To satisfy the particularity requirement, a warrant "must describe the objects of the search with reasonable specificity, but need not be elaborately detailed." *Vitek Supply Corp.*, 144 F.3d at 481. "In practice, courts have . . . demanded that the executing officers be able to identify the things to be seized with reasonable certainty and that the warrant description must be as particular as circumstances permit." *Jones,* 54 F.3d at 1290 (citing *United States v. Brown,* 832 F.2d 991, 996 (7th Cir. 1987)). *Accord United States v. Yusuf,* 461 F.3d 374, 395 (3d Cir. 2006) ("The breadth of items to be searched depends upon the particular factual context of each case and also the information available to the investigating agent that could limit the search at the time the warrant application is given to the magistrate.") Furthermore, when the search involves digital media, the Seventh Circuit has instructed police officers "to exercise caution to ensure that warrants describe with particularity the things to be seized and that searches are narrowly tailored to uncover only those things described." *United States v. Mann*, 592 F.3d 779, 786 (7th Cir. 2010).

The warrant in this case particularly described the place of the search: the white Samsung Galaxy III cell phone. With regard to the objects of the search, however, the warrant was facially overbroad, exceeded the probable cause to support it, and was not as particular as the circumstances would allow.

The warrant authorized the seizure of "any or all files" contained on the cell phone and its memory card that "constitute[d] evidence of the offense of [Public Indecency 720 ILCS 5/11-30],"[6] including, but not limited to, the calendar, phonebook, contacts, SMS messages, MMS messages, emails, pictures, videos, images, ringtones, audio files, all call logs, installed application data, GPS information, WIFI information, internet history and usage, any system files, and any delated data (Docs. 22-2, 22-3).

The major, overriding problem with the description of the object of the search—"any or all files"—is that the police did not have probable cause to believe that *everything* on the phone was evidence of the crime of public indecency. The description was a template used by the St. Clair County State's Attorney's Office for all cell phone searches. Templates are, of course, fine to use as a starting point. But they must be tailored to the facts of each case. This particular template authorized the seizure of virtually every piece of data that could conceivably be found on the phone. The Supreme Court put the scope of such a wholesale seizure in perspective by explaining that it "would typically expose the government to far *more* than the most exhaustive search of a house." *Riley v. California*, 134 S.Ct. 2473, 2491 (2014) (emphasis in original). Obviously, the police will not

---

[6] The warrant actually said "constituted evidence of Disorderly Conduct 720 ILCS 5/26-1" (Doc. 22-3). The Court previously found, however, that listing disorderly conduct as the relevant offense was a mistake, and the warrant intended to authorize a search for evidence of public indecency. *See supra* Part C.

have probable cause to search through and seize such an expansive array of data every time they search a cell phone. And, in the case of a misdemeanor crime, it is difficult to fathom why the police would ever need, or have probable cause, to do so. That certainly holds true in the instant case.

Based on the complaint supporting the search warrant, there was probable cause to believe that only two categories of data could possibly be evidence of the crime: photos and videos (*see* Doc. 22-2). The complaint did not offer any basis—such as facts learned during the investigation or Detective Lambert's training and expertise—to believe that the calendar, phonebook, contacts, SMS messages, MMS messages, emails, ringtones, audio files, all call logs, installed application data, GPS information, WIFI information, internet history and usage, or system files were connected with Winn's act of public indecency. In fact, the narrative portion of the complaint did not even mention those categories of data. Furthermore, Detective Lambert admitted at the hearing that he had no reason to believe much of that data contained evidence of the crime of public indecency.

The Government elicited explanations at the hearing from Detective Lambert and Investigator Robertson as to how some of this data might be evidence of the crime of public indecency. However, "[t]he police cannot rationalize a search *post hoc* on the basis of information they failed to set forth in their warrant application to a neutral [judge]." *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1257 n.8 (2012); *accord Guzman v. City of Chicago*, 565 F.3d 393, 396 (7th Cir. 2009) ("[Courts] do not view probable cause determinations with hindsight.") The validity of the warrant is assessed solely on the basis of the information that the police disclosed in the complaint at the time the search warrant

was issued. *See Messerschmidt*, 132 S.Ct. at 1257 n.8 ("It is elementary that in passing on the validity of a warrant, the reviewing court may consider *only* information brought to the magistrate's attention." (citing *Aguilar v. Texas*, 378 U.S. 108, 109 n.1 (1964)); *United States v. Carson*, 582 F.3d 827, 831-32 (7th Cir. 2009) ("If an affidavit is the only evidence presented to the judge in support of a search warrant . . . the validity of the warrant depends on the strength of the affidavit.") (citation omitted). "Information that emerges after the warrant is issued has no bearing" on the analysis of the validity of the warrant. *Guzman*, 565 F.3d at 396.

The bottom line is that if Detective Lambert wanted to seize every type of data from the cell phone, then it was incumbent upon him to explain in the complaint how and why each type of data was connected to Winn's criminal activity, and he did not do so. Consequently, the warrant was overbroad, because it allowed the police to search for and seize broad swaths of data without probable cause to believe it constituted evidence of public indecency.

With respect to the categories of data for which the police did have probable cause—the photos and the videos—the warrant was not as particular as could be reasonably expected given the nature of the crime and the information the police possessed. The warrant merely described the category of data, rather than specific items, which allowed the police to seize all of the photos and videos on Winn's phone, as opposed to specific photos and videos. As the Supreme Court explained, a sixteen-gigabyte smart phone like Winn's can hold thousands of pictures and hundreds of videos dating back "to the purchase of the phone, or even earlier." *Riley*, 134 S.Ct. at 2489,

2490. This is not a case where the police needed to browse through hundreds of photos and videos to find what they were looking for because Detective Lambert knew the precise identity and content of the photos/videos sought. However, he failed to mention the characteristics that made those photos/videos easily identifiable and distinguished them from others that were irrelevant. For example, the warrant could have described the location of the incident as well as the subjects of the images—children at a swimming pool, or more specifically young girls in swimsuits at the Mascoutah Public Pool. *See, e.g., Mann*, 592 F.3d at 780–81 (where warrant authorized police to search for "images of women in locker rooms or other private areas" for evidence of voyeurism).

Most importantly, the warrant should have specified the relevant time frame. The alleged criminal activity took place on one day only -- June 18, 2014 -- and the police were looking for photos or videos taken that same day. There was nothing in the complaint indicating that any data created prior to that date was connected to the suspected public indecency. "Failure to limit broad descriptive terms by relevant dates, when such dates are available to the police, will render a warrant overbroad." *United States v. Lazar*, 604 F.3d 230, 238 (6th Cir. 2010) (citing *United States v. Ford,* 184 F.3d 566, 576 (6th Cir. 1999) (warrant was overbroad where "the government chose to use descriptions of items to be seized that referenced no specific patients, no specific transactions, and most importantly, no time frame"). *See also United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars & Fifty-Seven Cents ($92,422.57)*, 307 F.3d 137, 156 (3d Cir. 2002) (warrant was overbroad where it contained no limitations as to the time period and "bestowed license to forage through any records," including those from an eleven-year period prior to the

time frame under investigation).

The only limit implied by the search warrant is the reference to the criminal statute that Winn supposedly violated. "An unadorned reference to a broad federal statute does not sufficiently limit the scope of a search warrant." *United States v. Leary*, 846 F.2d 592, 602 (10th Cir. 1988). *See also United States v. Spilotro*, 800 F.2d 959, 965 (9th Cir. 1986) (finding that search warrant violated particularity requirement where only limitation on scope of search was items to be seized had to be evidence of violation of one of thirteen statutes, some of exceptional scope); *United States v. Roche,* 614 F.2d 6, 8 (1st Cir. 1980) (finding that search warrant violated particularity requirement where only limitation was reference to the mail fraud statute which is extremely broad in scope). And a reference to a general statute certainly will not satisfy the Fourth Amendment's particularity requirement when the police could have more precisely described the evidence that they were seeking or included other limiting features. *See Cassady v. Goering*, 567 F.3d 628, 636 (10th Cir. 2009) ("It is not enough that the warrant makes reference to a particular offense; the warrant must ensure that the search is confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause.") (citation and alterations omitted). *But see United States v. Vitek Supply Corp.*, 144 F.3d 476, 481–82 (1998) (finding warrant did not violate particularity requirement because it was limited by reference to three narrowly focused statutes, narrowed by a date limitation, and the government could not have been more precise about the records it was seeking).

Here, it is especially hard to accept that the reference to the criminal statute could possible constitute a meaningful limitation on the scope of the search when the warrant

referred to the wrong criminal statute. Furthermore, the execution of the warrant clearly demonstrates that the reference to the criminal statute did nothing to actually restrict the seizure or limit the executing officers' discretion. Detective Lambert asked Investigator Robertson to do a complete phone dump, and Robertson used the Cellebrite UFED Touch machine to extract every bit of data from the cell phone that the machine could detect. Two calendar events, a forty-four item call log, twenty-three contacts, eighty text messages, 312 images, and twenty-five videos were seized from Winn's cell phone. (Doc. 22-4; Doc. 22-5). Notably, none of that data was evidence of public indecency. Some of it was, however, evidence of other crimes, namely child pornography and unlawful videotaping of a minor (*see* Government's Exhibit 5—Bates stamped pages 61–62; Government's Exhibit 6—Bates stamped pages 57–60). And Winn went from being suspected of misdemeanor public indecency to being charged with twenty-six unrelated felonies, including two in federal court. Thus, the warrant allowed precisely the kind of rummaging through a person's belongings, in search of evidence of even previously unsuspected crimes or of no crime at all, that the Fourth Amendment proscribes.

In sum, the complaint establishes that the police had probable cause to look for and seize a very small and specific subset of data on Winn's cell phone. But the warrant did not limit the scope of the seizure to only that data or describe that data with as much particularity as the circumstances allowed. Instead, the warrant contained an unabridged template that authorized the police to seize the entirety of the phone and rummage through every conceivable bit of data, regardless of whether it bore any relevance whatsoever to the criminal activity at issue. Simply put, the warrant told the police to take

everything, and they did. As such, the warrant was overbroad in every respect and violated the Fourth Amendment.

### E. Good Faith Exception

The Government argues that even if the warrant was overbroad and lacked particularity, the search was nonetheless valid under the good faith exception set forth in *United States v. Leon*, 468 U.S. 897, 926 (1984). The principle underlying the good-faith exception is that where "law enforcement officers have acted in objective good faith or their transgressions have been minor" the costs of the suppression on society and the judicial system compared to the magnitude of the benefit conferred on guilty defendants "offends basic concepts of the criminal justice system." *United States v. Leon*, 468 U.S. 897, 908 (1984). Therefore, under the good-faith exception, even if a warrant is ultimately found to be lacking in particularity, the evidence seized is still admissible if the officers conducting the search relied on the warrant in good faith. *United States v. Miller*, 673 F.3d 688, 693 (7th Cir. 2012) (*citing Leon*, 468 U.S. at 922–23). "A police officer's decision to obtain a warrant is treated as prima facie evidence that the officer was acting in good faith." *Miller*, 673 F.3d at 693 (citing *United States v. Garcia*, 528 F.3d 481, 487 (7th Cir. 2008)). Additionally, "[c]onsulting with the prosecutor prior to applying for [a] search warrant provides additional evidence of [that officer's] objective good faith." *United States v. Pappas*, 592 F.3d 799, 802 (7th Cir. 2010) (citation and internal quotation marks omitted). A defendant can rebut the prima facie evidence of good faith by showing that (1) the affiant misled the issuing judge with a reckless or knowing disregard for the truth; (2) the issuing judge abandoned his judicial role; (3) the complaint supporting the search warrant

was "bare bones" or "so lacking in indicia of probable cause" that belief in the existence of probable cause is unreasonable; or (4) the warrant was so facially deficient in failing to particularize the place to be searched or the things to be seized that the executing officers cannot reasonably presume it to be valid. *United States v. Glover*, 755 F.3d 811, 818-19 (7th Cir. 2014) (citing *Leon*, 468 U.S. at 923).

In this case, there is prima facie evidence that Detective Lambert acted in good faith because he not only decided to seek a search warrant, but he also had the documents that he prepared reviewed by an assistant State's Attorney before presenting them to Judge Fiss. Therefore, the burden falls to Winn to rebut the prima facie evidence of good faith. He argues that the first, second, and third circumstances apply—that Detective Lambert was reckless in not describing with particularity the items to be seized, that the complaint was so lacking in indicia of probable cause that reliance on it was unreasonable, and that Judge Fiss abandoned his judicial role by acting as a rubber-stamp (Doc. 22, pp. 11–12). Winn's argument regarding probable cause can be easily discarded because the Court already discussed that the complaint adequately established probable cause to believe that Winn's cell phone contained evidence of a crime. Winn's other two arguments, however, require a closer look.

A review of the facts in this case shows that there is certainly an element of recklessness on the part of Detective Lambert with respect to the list of items to be seized. The complaint supporting the search warrant is geared toward searching for and seizing only photos or videos of young girls in swimsuits taken at the Mascoutah Public Pool on June 18, 2014. Detective Lambert admitted at the hearing that those photos or videos were

the only evidence that he wanted to get from Winn's cell phone. Detective Lambert also admitted that he had not uncovered any information suggesting that Winn forwarded these pictures to anyone, and he had no reason to believe that the calendar, call log, or text messages contained any evidence of public indecency. Yet, when he drafted the complaint, he chose not to edit the template of items to be seized to eliminate the categories of data that had no connection to the suspected crime. He also chose not to incorporate any information that would have substantially clarified the description of the data to be seized so as to limit the invasion of Winn's privacy. He explained at the hearing that he simply inserted the entire template and left it to the assistant State's Attorney to edit it down.

Detective Lambert's expectations were misguided, however, because ASA Elliot's review of the complaint and search warrant template was quick and cursory; overall, she failed to tailor the warrant to the facts or the crime under investigation. For instance, she mistakenly indicated on the warrant that the relevant offense was disorderly conduct. She also indicated on the warrant that the day was Wednesday when it was actually Monday, and she failed to insert the date and the month. Most importantly, she did not edit down the template of the list of items to be seized from Winn's cell phone. She left it as is, even though it was glaringly overbroad.

Judge Fiss did the same. Detective Lambert testified that Judge Fiss did not simply sign warrant. Judge Fiss swore Lambert in, and it appeared to Lambert that Judge Fiss went through each individual page of the complaint and the search warrant. While Lambert was unsure of the exact amount of time that Judge Fiss spent reviewing it, he

indicated that the Judge did not rush through it by any means. Even accepting Lambert's testimony as true, it is manifest that Judge Fiss abandoned his judicial role to some extent. Courts typically exhibit a "strong preference for warrants" and provide "great deference" to a judge's conclusion that a warrant shall issue. *Leon*, 468 U.S. at 914 (internal quotation marks and citation omitted). "Deference to the [judge], however, is not boundless." *Id.* It is unwarranted when the issuing judge serves as "a rubber stamp for the police" or fails to "perform his neutral and detached function." *Id.* (internal quotation marks and citation omitted). Judge Fiss did not notice the discrepancy between the complaint and the warrant with respect to the relevant offense. No red flags were raised and no alarm bells sounded for Judge Fiss by the fact that the police were seeking a warrant to rummage through every conceivable bit of data in Winn's phone for a *misdemeanor* crime. It is simply impossible to conclude that Judge Fiss adequately reviewed the complaint when he signed off on a warrant despite the facially overbroad nature of the list of items to be seized and its utter disconnect from the type of crime at issue and the facts alleged in the complaint.

Although not argued by Winn, the Court thinks that the fourth circumstance also applies in this case. As thoroughly explained above, *see supra* Part D, the warrant was so facially and grossly overbroad in its description of the items to be seized that "[a] reasonably well-trained officer would have known the search was illegal despite the issuing judge's authorization." *Leon*, 468 U.S. at 923, n.23. Detective Lambert and Investigator Robertson had at least fifteen years of experience between them, and it was not objectively reasonable for them to think that a warrant was valid when it gave them

unbridled discretion to search for and seize whatever they wished. *United States v. Leary*, 846 F.2d 592, 609 (10th Cir. 1988) ("A reasonably well-trained officer should know that a warrant must provide guidelines for determining what evidence may be seized.") Nevertheless, they took advantage of the full breadth of the warrant and seized the entirety of the phone. Simple common sense dictates that Detective Lambert did not need to look at every bit of data in the cell phone to find the pictures of young girls in swimsuits taken at the Mascoutah Public Pool on June 18, 2014. One cannot find photos taken on a particular date by looking at photos taken three months prior to that date, much less by looking at calendar entries, ringtones, or call logs. *See Platteville Area Apartment Ass'n v. City of Platteville,* 179 F.3d 574, 579 (7th Cir. 1999) ("If you are looking for an adult elephant, searching for it in a chest of drawers is not reasonable.") Furthermore, as explained below, Robertson and Lambert shockingly managed to exceed the scope of the warrant despite its incredible overbreadth. Their disregard for the one limitation in the warrant tends to negate the argument that they relied on the warrant in good faith.

Based on the foregoing, the Court finds that the good faith doctrine is inapplicable to the facts of this case.

## F.  Exceeded the Scope of the Warrant

Winn's final argument is that the police violated the Fourth Amendment by the manner in which the officers executed the search warrant, specifically by exceeding the scope of the warrant (Doc. 22, pp. 8–11). His primary complaint is that Investigator Robertson used a forensic extraction device to search the phone instead of simply performing a manual search. The Court thinks this argument is misguided based on the

circumstances of this case. The Cellebrite machine was used to extract all of the data from Winn's cell phone and then index and catalogue it into a more user-friendly format for viewing. Given that the warrant authorized the police to search the entirety of the cell phone, using the Cellebrite machine is certainly the easiest and most expeditious way to view all of the data. *See United States v. Mann*, 592 F.3d 779, 784 (7th Cir. 2010). Had the warrant been properly circumscribed, then this argument might have some validity to it.

Winn also suggests that Investigator Robertson was not actually looking for evidence of public indecency and that viewing the images in the extraction report exceeded the scope of the warrant (Doc. 22, pp. 8–9, 11). While these ideas were not fully expanded on, the Court believes it is important to address them because they touch on the notion that the executing officers searched for evidence of *any* crime instead of limiting their search to evidence of public indecency.

It is evident that neither Investigator Robertson nor Detective Lambert reviewed the extraction report simply to identify and segregate the items that were related to the public indecency incident and therefore fell within the scope of the warrant. Investigator Robertson testified at the hearing that he did not review the extraction report to see if the photos of the young girls at the pool were on it, and he did not even know that those photos had not been extracted until several days later. Robertson did, however, see images of child pornography in the extraction report. Those images had no relevance whatsoever to the public indecency incident and were obviously outside the scope of the warrant. But Robertson still performed a manual search of the phone and figured out that several of the photos had been downloaded from the KIK application (Doc. 22-4). He also

told Detective Lambert about the child pornography, and together the two of them went to Winn's house where they obtained consent from Winn's mother to search the house (Doc. 22-4), presumably for more evidence of child pornography.

As for Detective Lambert, he testified that he realized the photos of the young girls at the pool were not on the extraction report at the time he went through it. Yet he still did not attempt to manually search the phone for those photos for a number of days. Instead, like Investigator Robertson, he was busy following up on data that was not connected to the public indecency incident. He discovered three videos that implicated Winn for unlawfully videotaping a minor (see Government's Exhibit 6—Bates stamped pages 57–60). He watched those videos, even though they clearly did not pertain to the alleged public indecency at the pool, and then undertook an investigation to identify the child in the videos (see id.). Lambert also viewed the content of every other photo and video that was extracted even though he could tell at a glance that the bulk of them had nothing to do with the alleged public indecency based on the thumbnail images and the fact that they were created weeks, if not months, prior to the incident. He then itemized the photos and videos, categorized them based on their content, and also summarized of the content of some (see Doc. 22-5).[7]

---

[7] With respect to the photos, he indicated that seventy-two pictures were blank or of a non-sexual nature; twenty-one pictures were of a penis; 219 pictures were of a sexual nature—"mostly all having images of females [sic] subjects appearing to be under the age of 17, many with female subjects appearing to be under the age of 8"; and twenty-three images were of "sexual penetration and/or appearing to have male ejaculation on minor female subjects (including images of what appears to be infants" (Doc. 22-5). With respect to the videos, a number of them were of "a male subject masturbating until ejaculation;" two were of female subjects who appeared to be under the age of thirteen masturbating to their webcam; one video was a female subject who appeared to be under the age of eight performing oral sex on an adult male and getting anally penetrated by an adult male; and one video was multiple female subjects who appeared to be under the age of twelve engaging in numerous sexual acts with one another and with an adult male (Doc. 22-5).

Inspector Robertson and Detective Lambert's actions make clear that whatever interest they had in finding the photos of the girls in swimsuits was lost as soon as they discovered evidence of other unrelated crimes. They essentially abandoned their search for evidence of public indecency in order to follow the trail of evidence for the new crimes. Case law from the various circuits makes clear that police cannot abandon a warrant-authorized search in order to pursue evidence of an unrelated crime unless they have obtained another warrant. *United States v. Carey*, 172 F.3d 1268, 1276 (10th Cir. 1999). *But see United States v. Mann*, 592 F,3d 779, 786 (7th Cir. 2010) (distinguishing *Carey* and upholding search where detective continued searching computer for evidence of voyeurism after finding child pornography, but noting that the detective's "failure to stop his search and request a separate warrant is troubling"); *United States v. Burgess*, 576 F.3d 1078, 1094–95 (10th Cir. 2009) (distinguishing *Carey* and upholding search where officer "observed a possible criminal violation outside the scope of the warrant's search authorization" and he "immediately closed the gallery view . . . and did not renew the search until he obtained a new warrant"); *United States v. Wong*, 334 F.3d 831, 835 (9th Cir. 2003) (distinguishing *Carey* and upholding search where the officer continued his warrant authorized search of the defendant's computer for murder after discovering child pornography).

To summarize, Investigator Robertson and Detective Lambert searched and seized data when they knew they were not going to find evidence related to public indecency. In doing so, they ignored the one limitation in the warrant and exceeded its scope. They conducted a general search for crimes unrelated to public indecency and violated the

Fourth Amendment.

To the extent the Government believes that child pornography could be seized pursuant to the plain view doctrine,[8] the Court disagrees. The child pornography was only in plain view because Robertson and Lambert violated the Fourth Amendment and overseized data. *See United States v. Stabile*, 633 F.3d 219, 241 (3d Cir. 2011) (nothing that the first requirement for a valid seizure in plain view is that "the officer must not have violated the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed.") (citation and internal quotation marks omitted). The Government did not make the argument, and there is nothing to suggest, that had the search warrant been properly circumscribed to photos and videos within a specific time period and the executing officers narrowly tailored the search to uncover only those things, that the officers would have nonetheless stumbled upon the child pornography.

## G. Suppression

In determining whether to suppress the evidence obtained from Winn's cell phone, the Court relies on its conclusion that the warrant was overbroad and lacked sufficient particularity in violation of the Fourth Amendment, and that the good faith doctrine is inapplicable to the facts of this case. Furthermore, the Court believes that suppression of the evidence seized from the cell phone will serve the exclusionary rule's goal of deterrence. This case goes to the very heart of what the Fourth Amendment was designed to prohibit—general warrants and general searches.

Because the warrant is a general warrant, it has no valid portions. Every portion is

---

[8] Counsel for the Government stated at the evidentiary hearing that photos of child pornography were in plain view.

impossibly overbroad, encompassing every conceivable bit of data generated by the use of the cell phone at any point in time. "[T]he only remedy for a general warrant is to suppress all evidence obtained thereby." *United States v. Yusuf*, 461 F.3d 374, 393 (3d Cir. 2006) (citing *United States v. Christine*, 687 F.2d 749, 758 (3d Cir. 1982) ("It is beyond doubt that all evidence seized pursuant to a general warrant must be suppressed.")); *Cassady v. Goering*, 567 F.3d 628, 642 (10th Cir. 2009) ("[U]nder the long-established rule[,] general warrants cannot be saved.") *But see United States v. Reed*, 726 F.2d 339, 342 (7th Cir. 1982) (holding valid portions of warrant are severable from any invalid portions).

<h2 align="center">CONCLUSION</h2>

Defendant Nathaniel Winn's Motion to Suppress Evidence (Doc. 21) is **GRANTED in part** and **DENIED in part**. All evidence obtained from Defendant's cell phone is **SUPPRESSED**.

**IT IS SO ORDERED.**

**DATED: February 9, 2015**

> **s/ Nancy J. Rosenstengel**
> **NANCY J. ROSENSTENGEL**
> **United States District Judge**